IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:25–CR–249 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| JOSHUA L. WOOLRIDGE, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Defendant. | ) | |

This matter comes before the Court on Defendant Joshua Lloyd Woolridge's *Motion to Suppress* filed by his attorney on July 29, 2025, (ECF #15), which the Government opposed on August 25, 2025. (ECF #17). Counsel made oral arguments at an in-person suppression hearing on September 29, 2025. (ECF #19). At the hearing, each party waived the opportunity to make opening statements. The Government called Akron Police Department Officer Sara Kalain, and the defense called Defendant Joshua Woolridge to the stand. Testimony was taken from each witness. Both parties rested without calling any additional witnesses.

Each party had the opportunity to supplement its argument by October 6, 2025, and neither party chose to do so. The Defendant's motion is now ready for review.

### Statement of Facts

This case started with a routine traffic stop on February 21, 2025. Officers Kalain and Jubara were patrolling Akron shortly after 9:00 pm, with Jubara behind the wheel and Kalain in

the passenger seat, when they observed a red 2019 Chevrolet Equinox run a red light at the intersection of Market Street and Broadway. The Officers initiated a traffic stop by activating their lights, and the vehicle pulled to the side of the road.

Officer Kalain was the first to exit the cruiser. She approached the passenger-side window, where the Defendant was ready with his identification card. After tapping on the glass, the Defendant lowered the window and handed her his identification, at which point Officer Kalain noticed the odor of burnt marijuana.[1] (TR, p.5). She asked if there were any firearms in the vehicle, and both the driver and passenger said no.

At this time, Officer Jubara came to the driver's side of the vehicle and retrieved the license of the driver, Jimmy Schmidt. Officer Jubara took the identification of the driver and passenger and returned to the cruiser to run their information through dispatch. The search revealed that the driver (Schmidt) had a valid license and that the passenger (Defendant Woolridge) did not. However, Officer Jubara mixed up the identifications and mistakenly believed that the suspended license belonged to the driver, and, therefore, that he was driving with a suspended license.

Accordingly, Officer Jubara returned to the vehicle, informed the driver that his license was suspended, and asked him to get out. The driver protested briefly, stating that he could prove his license was valid on his phone. Officer Jubara told the driver they could discuss it once he exited. The driver ultimately complied with Officer Jubara's request, exited the vehicle, and was placed in handcuffs.

---

[1] Officers recovered an unspecified amount of marijuana from the driver and returned it to him upon completion of the stop. (TR, p.34).

Meanwhile, Defendant Woolridge sat in the passenger seat with the door closed while Officer Kalain stood outside his window. Defendant Woolridge watched as the driver was placed in custody. He then turned to and had the following interaction with Officer Kalain:

| | |
|---|---|
| **Defendant:** | **I'm under arrest, ma'am?** |
| Officer Kalain: | You? Why are you under arrest? So, he's driving under suspension. It's an arrestable offense, so they're putting him in cuffs. What's your question? |
| **Defendant:** | **I gotta get out the car and stuff?** |
| Officer Kalain: | We will have you get out of the car, but you're not, like, under arrest right now. |
| **Defendant:** | **Oh.** |
| Officer Kalain: | You're just, you know, it's a traffic stop, so. |

Officer Kalain then asked whether Defendant had a valid license. He said no because he "just came home from the feds," which he clarified meant he was recently released from federal prison. Without being questioned by Officer Kalain, Defendant stated, "Ma'am. I won't beat around the bush, ma'am. Open the door, ma'am." Officer Kalain waited for another officer to come around to the passenger side of the vehicle and then opened the door. After opening the door, Defendant raised his hands and told her, "I've got two guns in my pants." Officers removed Defendant from the vehicle without protest, placed him in handcuffs, and recovered two loaded firearms from the bottom of his right pant leg, one of which was stolen. Defendant was arrested for possession of the firearms. After discovering the identification mix-up, Officers released the driver with a traffic citation.

## Legal Analysis

Defendant moves to suppress the two firearms recovered from his person and challenges the search of the car. Seeing that no evidence was obtained from the car, there is no evidence to suppress. Therefore, the Court does not need to address the constitutionality of its search.

Defendant argues, in the main, for suppression of the firearms based on the voluntary statements he made to Officer Kalain and the alleged lack of reasonable suspicion prompting the search of his person. Defendant argues that he was not Mirandized before he told Officer Kalain that he had firearms in his pants. However, "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Persons temporarily detained pursuant to ordinary traffic stops are not "in custody" for the purposes of Miranda. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

The record clearly establishes that Defendant made the statements voluntarily and at a point when he was not in custody. He was seated in the car while the driver was removed and handcuffed. He then turned and stated to Officer Kalain, "I'm under arrest, ma'am?" to which she replied, "You're not . . . under arrest right now." Immediately after, he voluntarily stated: "I won't beat around the bush, I've got two guns in my pants." (TR, p.15). He then requested that Officer Kalain open the door and retrieve the firearms from his pants so that they did not fall out when he exited. It is clear that Defendant made this statement voluntarily, and it was neither in response to an Officer's question nor at a point when he was in custody. Accordingly, Officers were not required to Mirandize Defendant before he told them he had firearms in his pants.

The statement that he possessed firearms also served as the basis for the search of his person. Defendant argues that Officer Kalain lacked "information sufficient to support

reasonable articulable suspicion that Mr. Woolridge was armed and dangerous at the time she conducted the patdown search." (ECF #15, p.2). The standards for probable cause and reasonable suspicion are "not readily, or even usefully, reduced to a neat set of legal rules." *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996). Nonetheless, the Supreme Court has "described reasonable suspicion simply as a 'particularized and objective basis' for suspecting the person stopped of criminal activity" and has defined "probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.* (citations omitted).

In the present case, Defendant admitted to possessing two firearms after stating he had no weapons and that he was recently released from federal prison. His initial denial of having weapons suggests that the firearms may have been illegal. Further, the fact that he had previously been in federal prison created a reasonable belief that he could be a felon in possession of a firearm. Accordingly, Officers were permitted to search Defendant for the weapons he had asked them to retrieve and voluntarily stated he had.

## Conclusion

For all the reasons set forth above, Defendant's *Motion to Suppress*, (ECF #15), is DENIED. A final pretrial is scheduled for October 16, 2025, at 9:00 am by telephone.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: October 8, 2025